292-23/JFK
John F. Karpousis
J. Tanner Honea
Matthew J. Pallay
FREEHILL HOGAN & MAHAR LLP
80 Pine Street, 25TH Floor
New York, NY  10005
(212) 425-1900
*Attorneys for Petitioner American Maritime Services*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN THE MATTER OF THE VERIFIED PETITION OF AMERICAN MARITIME SERVICES OF NEW YORK TO PRESERVE EVIDENCE IN AID OF ANTICIPATED LITIGATION PURSUANT TO RULE 27 FED. R. CIV. P. | 23-cv-_____<br><br>**VERIFIED PETITION TO PRESERVE EVIDENCE AND FOR ORDER TO SHOW CAUSE** |

Petitioner American Maritime Services of New York ("AMS" or "Petitioner"), by its attorneys Freehill Hogan & Mahar LLP, as and for its Verified Petition to Preserve Evidence Pursuant to Federal Rule of Civil Procedure 27 alleges upon information and belief as follows:

## JURISDICTION

1.      This is a matter within the Court's admiralty or maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2.      The parties are subject to this Court's personal jurisdiction because the underlying incident and loss occurred within this district and the parties are currently present within this district.

## THE PARTIES

3.      At all relevant times, Petitioner AMS is a business entity incorporated in the United States with a place of business at 138 Marsh St, Newark, New Jersey, 07114, and was engaged in the business of supplying labor for the loading and discharge of vessels in Port Newark.

4.      At all relevant times, Ports America is a business entity incorporated in the United States with a place of business at 171 Marsh Street, Port Newark, New Jersey 07114, and was engaged in the business of loading and discharging vessels in Port Newark.

5.      At all relevant times, M/V COSTA GRANDE D'AVORIO (the "Vessel"), IMO No. 9465382, is a Roll-on/Roll-off ("RO/RO") vessel flagged in Italy and owned by Grimaldi Deep Sea S.p.A.

6.      Grimaldi Deep Sea S.p.A. ("Grimaldi" or "Owner") is a foreign business entity incorporated in Italy with a place of business at Via Marchese

Campodisola 13, 80133 Naples NA, Italy, and at all relevant times was engaged in the business of owning the Vessel and managing the Vessel's manning, repair, maintenance, and operations, which included transportation of cargo by water for hire.

7.      Various crewmembers of the Vessel are foreign citizens.

### THE FACTS

8.      In support of its application, Petitioner AMS relies upon the following declarations, annexed hereto:  Declaration of John F. Karpousis (Lead Counsel); Declaration of Peter Deegan (Marine Engineer); Declaration of Carl Dolente (Fire Investigator), and; Declaration of Adam Goodman (Fire Investigator and Fire Suppression System Expert).

9.      On or about July 5, 2023, the Vessel docked in Port Newark, New Jersey, and AMS and Ports America began loading the Vessel with used vehicles for delivery to non-U.S. ports.

10.     On the evening of July 5, while the Vessel was still being loaded, a fire broke out aboard the Vessel in the cargo decks where cars were being loaded.  The fire continued to burn for approximately six days and was extinguished on July 11, 2023 (collectively, these facts are referred to as the "Incident").  It is understood that various persons responded to the fire, including the Vessel's crew, the Newark Fire

Department, the U.S. Coast Guard, and specialty salvors SMIT, who were hired by Grimaldi.

11.    The fire caused extensive damage to the Vessel and cargo and sadly resulted in the loss of two firefighters from the Newark Fire Department.

12.    After the fire was extinguished, several government agencies began investigating and continue to investigate the circumstances surrounding the fire and subsequent firefighting efforts, including the U.S. Coast Guard ("USCG"), the National Transportation and Safety Board ("NTSB"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the New Jersey Essex County Prosecutor's Office.

13.    Given the loss of life and large property loss, as well as the fact that the fire began in the cargo hold while loading operations were ongoing, AMS anticipated that it would eventually become involved in future litigation arising from the Incident.  Several of its employees have already been interviewed by the USCG, and it is understood that similar interviews have occurred or will occur concerning the Vessel's crew, Ports America personnel, Newark Fire Department personnel, and others.

14.    On July 11, 2023, AMS sent correspondence to attorneys representing the Vessel and Owner requesting that they protect and preserve all documents, data, and electronically stored information ("ESI") related to the Incident in anticipation

of litigation.   The correspondence also included a preliminary request for the production of documents, data, and other materials required to aid AMS's experts' inspection of the Vessel.  (Letter of July 11, 2023, attached hereto as Exhibit 1).

15.     The following day (July 12), counsel for the Vessel produced only one of the requested documents, a General Arrangement Plan, which is only a general drawing or schematic depicting the Vessel's different compartments with very little detail. (Karpousis Decl. ¶ 10).  For instance, General Arrangement drawings do not include any detailed data related to fixed firefighting systems, fire alarm systems, or ventilation systems.  (Deegan Decl. ¶ 7).

16.     On July 14, 2023, without producing any additional documents or information, the Vessel permitted Ports America and AMS to conduct a limited visual inspection of three cargo decks:  Decks 10, 11, and 12.  That inspection lasted a mere two (2) hours, approximately. AMS's experts, without the aid of any relevant Vessel-specific information or data, attended and photographed the areas permitted by the Owner.

17.     Later, on July 14, Owner's counsel advised that the Vessel had twenty-eight (28) crewmembers onboard, and that the USCG was permitting twelve (12) of them to return home while keeping the remaining sixteen (16) in New Jersey and holding their passports.  (Karpousis Decl. ¶ 12).

18.     On July 20, 2023, AMS sent further correspondence to the Vessel and Owner seeking permission to inspect the Vessel's fire suppression system, including all related control and alarm panels, activation sites, storage rooms, supply and distribution piping, and any other part or component.  (Karpousis Decl., Ex. 2).  AMS also reiterated its request for documents, incorporating the same list it had previously served on counsel on July 11.  *Id.*  AMS also requested access to the crew and an opportunity to interview the master, chief mate, chief engineer, second mate, bosun, any crewmembers who responded to the scene of the fire, and any other crewmembers who have knowledge of the fire and related firefight.  *Id.*  AMS expressly provided that without an agreement to produce the requested information, AMS would seek judicial intervention as appropriate.  *Id.*

19.     In correspondence from Owner's counsel on July 24, 2023, counsel rejected production of the requested documents and informed AMS that the Owner "[is] not making the crew available to AMS and Ports America."  (Karpousis Decl., Ex. 3).  Owners simultaneously provided that AMS would have the opportunity to visually inspect Decks 9-12 of the Vessel and the "CO2 Room," but also noted that "salvors are proceeding with their salvage plans" and the "USCG investigation and salvor's work takes priority over the AMS and Ports Americas desire to obtain pre-litigation discovery."  *Id.*  Counsel further noted, "If your goal is to view the vessel

before the vehicles and debris are cleared, then we suggest a return visit as soon as possible." *Id.*

20.     Owner then announced that it would permit a visual inspection of Vessel Decks 9-12 and the "CO2 Room" on July 25.  (Karpousis Decl., Ex. 3).  On the evening before the inspection, Owner disclosed the Vessel's "Fire Control and Safety Plan," which is a drawing showing the location of firefighting equipment on the Vessel.  (Deegan Decl. ¶ 4) No other documents were produced prior to the limited inspection, and no further documents have been produced as of the filing of this petition. (Karpousis Decl. ¶ 15)

21.     A visual inspection of the areas permitted by Owner occurred on July 25. During the inspection, a laser scan was conducted by AMS's experts to record the location of items on Decks 10-12.  (Karpousis Decl. ¶ 16; Deegan Decl. ¶ 6).

22.     On July 30, 2023, the undersigned wrote to Owner's counsel and requested a timetable for the Vessel's departure from Port Newark and valuation of the Vessel.  Owner's counsel first responded he could not provide a "definitive answer" to any of the questions raised.  Later that day, after being further pressed, counsel indicated he "heard rumor" the Vessel may get repairs somewhere in the Mediterranean.  Ex. 5 at p 1.

23.     On July 31, 2023, counsel for Owner's further described the nature of ongoing repairs and alteration of the Vessel's condition.  (Karpousis Decl., Ex. 6).

Counsel explained that everything on the Vessel "will be brought back up to operational standards," and "burned and damaged equipment will be discarded. Fixed systems will be repaired, as needed." *Id.* Among the systems to be repaired, Owner included "any and all fire suppression systems aboard the vessel," and "all fire pumps, fire stations, smoke detectors, smoke alarms, all firefighting detection and suppression systems." Owner's counsel then reiterated that as to AMS's requests to depose crewmembers, Owner's position "remains the same," and Owners "are not making crew available to AMS and Ports America." *Id.* at 2.

24.    In accordance with Owner's representations, there is no question that conditions on the Vessel are being altered, *including the condition of fire suppression equipment*, which will clearly be relevant in any future litigation. Owners are making these alterations without every having provided AMS's experts with any of the documents or data requested, preventing them from identifying all relevant areas of inspection prior to their alteration. Moreover, Owner has consistently communicated that it "will not" make any of the foreign crewmembers available to AMS for deposition.

25.    In order to identify all relevant areas for inspection prior to their condition being altered during ongoing salvage operations, AMS's experts require the documents and data that had previously been requested from the Vessel and Owner. (Deegan Decl. ¶ 7-11, Dolente Decl. ¶ 5-9, Goodman Decl. ¶ 6-10). The

condition of the Vessel and its equipment immediately following the fire will only exist for a short time, and AMS's experts should be permitted to review the requested documents and data to determine what areas of the Vessel and equipment they need to inspect and record in order to form opinions regarding the cause and origin of the fire, the adequacy and functionality of shipboard fire suppression systems, and adequacy of the crew's response to the fire, among other topics. *Id.*

26.    Also, AMS requires the opportunity to depose the Vessel's crewmembers regarding the fire, firefighting efforts, and the crew's relevant training and qualifications. Although Owner has not yet disclosed the Crew List identifying all members of the crew (despite AMS's request), it is AMS's understanding that all crewmembers were foreign citizens, and that some have already exited this Court's jurisdiction and returned home.  (Karpousis Decl. ¶ 12).  Once crewmembers return home, they are outside the Court's subpoena power, and despite any efforts by Owner to make them available in the normal course of subsequent litigation, they may simply scatter to the wind, never to return.  As many crewmembers will undoubtedly have critical information relevant to any related civil action, AMS demands the opportunity to depose them prior to their departure from the United States. (Deegan Decl. ¶ 12, Dolente Decl. ¶ 10, Goodman Decl. ¶ 11) Additionally, the documents and data demanded by AMS are important to counsel's ability to conduct a

meaningful deposition of the witnesses prior to their departure from the U.S. (Karpousis Decl. ¶ 21).

27.     AMS submits this petition to respectfully request that the Court issue an order pursuant to Rule 27 of the Federal Rules of Civil Procedure requiring the Vessel to produce the requested documents and data; to permit inspection of areas of the Vessel and equipment aboard the Vessel to be identified by AMS's experts following their receipt and review of the requested documents and data, and; to make all crewmembers available for depositions prior to their departure from the United States.

## LEGAL ARGUMENT

### I.     The Federal Rules of Civil Procedure permit AMS to perpetuate evidence that may be lost prior to initiation of litigation.

28.     Rule 27 of the Federal Rules of Civil Procedure provide potential litigants with a right to perpetuate testimony and evidence prior to the initiation of litigation. The Rule provides that "[a] person who desired to perpetuate testimony regarding any matter that may be cognizable in any court of the United States may file a verified petition in the United States district court in the district of the residence of any expected adverse party."  Fed. R. Civ. P. 27.

29.     The Rule further provides five conditions that the party seeking discovery must satisfy, including:  (1) that it expects to be a party to an action that

may be cognizable in any court of the United States, but the action is unable to be brought presently; (2) it must set forth the subject matter of the expected action and the petitioner's interest in such an action; (3) it must present facts which the petitioner seeks to establish through the proposed testimony and the reasons for desiring to perpetuate that testimony at this time; (4) it must provide the names or description of the expected adverse parties; and (5) it must provide the names and addresses of the witnesses to be examined and the substance of the testimony petitioner expects to obtain from those witnesses. Fed. R. Civ. P. 27(a)(1).

30.     A court may then issue an order under Rule 27 if it is "satisfied that perpetuating the testimony may prevent a failure or delay of justice."  Fed. R. Civ P. 27(a)(3).  The court's decision to grant or deny a Rule 27 petition is reviewed under an "abuse of discretion" standard.  *Deiulemar Compagnia di Navigazione S.P.A. v. M/V Allegra*, 198 F.3d 473, 480 (4th Cir. 1999).

31.     Several courts have held that Rule 27 may apply in admiralty cases where witnesses or physical evidence (such as the Vessel) may depart the United States or where evidence may be altered on short notice. *See Deiulemar Compagnia di Navigazione S.P.A. v. M/V Allegra*, 198 F.3d 473, 480 (4th Cir. 1999);[1]  *Koch Fuel International, Inc. v. M/V South Star*, 118 F.R.D. 318, 320 (E.D.N.Y. 1987) (granting

---

[1] Because multiple relevant cases involve the party "Deiulemar Compagnia di Navigazione S.p.A." we short cite this opinion as "*M/V Allegra*."

petitioner's request to a physical inspection of the vessel, access to its records, and depositions of five crewmembers); *In re Raffles Shipping Int'l PTE, Ltd.*, No. 10-0693-MLCF-SS, 2010 U.S. Dist. LEXIS 19624, *2 (E.D. La. Mar. 3, 2010); *In re Deiulemar Di Navigazione, S.p.A.*, 153 F.R.D. 592 (E.D. La. 1994) (ordering deposition testimony of crewmembers); *Phibro Commodities v. M.V. Rizcun Trader, et al.*, 1997 AMC 2025 (E.D. Pa. 1997) (permitting Rule 27 discovery where foreign vessel would depart the jurisdiction with foreign crewmembers).

32.     Despite Rule 27's use of the phrase "perpetuation of testimony," courts have held that this also includes other evidence, such as physical evidence and documents where appropriate.  For instance, the U.S. Fourth Circuit Court of Appeals has noted:

> Perpetuation of testimony includes the inspection of documents and things. *See Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961). For the sake of convenience, we refer to "testimony" and "evidence" interchangeably in the context of Rule 27 because Deiulemar is perpetuating the evidentiary basis of expert testimony of the ship's condition before completion of repairs.

*M/V Allegra,* 198 F.3d at 478, n.5.

33.     Indeed, the district court in *M/V Allegr*a granted the petition for Rule 27 discovery and ordered that the petitioner could "inspect the vessel, observe repairs, and copy documents from the ship." *Id.* at 478.  Because the particular dispute at issue was subject to arbitration, the court required the evidence to be held *in camera*

pending appeal, but the appellate court found that the district court did not abuse its discretion in granting the Rule 27 petition. *Id.* at 484; *see also*, *Phibro Commodities v. M.V. Rizcun Trader, et al.*, 1997 AMC at 2028 (ordering the "reasonable inspection of documents and the vessel" in addition to deposition of six crewmembers upon 36-hours' notice). Thus, AMS's request for production of documents necessary for its experts to conduct meaningful inspections of the Vessel and depositions of crewmembers is both reasonable and contemplated by Rule 27.

34.   Although many courts addressing Rule 27 in the admiralty context involve the limited time that a foreign vessel and its crewmembers may remain in the United States, courts also grant Rule 27 petitions when relevant conditions of a vessel are subject to change due to ongoing repairs. For instance, in *M/V Allegra*, the petitioner's request to inspect the vessel stemmed, at least in part, from the vessel owner's ongoing repairs to the vessel that would potentially eliminate relevant physical evidence:

> As a result [of repairs], Deiulemar was in danger of losing access to any evidence <u>of the ship's condition</u>. Although Deiulemar arguably could have sought emergency discovery from the London arbitrator, Deiulemar represented that it could not do so in time to preserve the <u>rapidly changing condition of the ship</u>. Given the time-sensitive nature of Deiulemar's request and the evanescent nature of the evidence sought, we do not believe that the district court abused its discretion in accepting Deiulemar's representation.

*M/V Allegra,* 198 F.3d at 480 (underlining emphasis added).

35.     In that case, a vessel's main engine broke down during an ocean voyage and the vessel's charterer sought to preserve evidence relevant to the cause of a breakdown because under the terms of the charter, the charterer was contractually responsible for "maintaining" the hull and machinery. *Id.* at 477. While the vessel was in port in Baltimore, the vessel owner denied the charterer's attempt to send a marine expert onboard to inspect the condition of the engine and copy relevant documents. *Id.* The charterer subsequently petitioned the court under Rule 27 for discovery, which was granted, and the court's order included the charterer's ability to "inspect the vessel, observe repairs, and copy documents from the ship." *Id.* at 478.

36.     Here, the petition before this Court concerns a foreign vessel that is currently undergoing repairs in Port Newark following a massive fire that resulted in substantial damage to cargo, the Vessel, and also the loss of two firefighters. The Vessel Owner has refused to provide copies of relevant documents, without which AMS's experts remain at a disadvantage of Owner's making because they are prevented from identifying exactly what equipment or areas aboard the ship needs to be inspected prior to alteration. What is clear, however, is that the Vessel's condition is changing and evidence that could be relevant, if not critical, to AMS's experts' analysis may be lost. Fire-damaged cargo and debris is currently being removed, and it is expected that additional repairs, including fire suppression system repairs, may

be required prior to the Vessel proceeding to another port.  (Deegan Decl. ¶ 10).

When the district court in *M/V Allegra* considered a similar concern, it acknowledged

that certain evidence may be lost if equipment is altered during vessel repairs and

granted Rule 27 relief.

37.     AMS's requests to depose crewmembers with knowledge of the fire's

cause and origin and subsequent firefighting efforts have also been flatly rejected,

forcing AMS to seek relief from this Court.  Against this background, AMS addresses

the specific factors enumerated in Rule 27.

*(A)     the petitioner expects to be a party to an action cognizable in a United
States court but cannot presently bring it or cause it to be brought;*

38.     The fire aboard the Vessel occurred while AMS's personnel were

working to load vehicles onboard.  The fire ultimately burned in the cargo storage

area where vehicles had been and were being loaded, and AMS anticipates that it,

Ports America, the Vessel, and Vessel Owner would likely be named as parties to any

future lawsuits arising from the fire, whether as direct defendants or third-party

defendants.  (Karpousis Decl. ¶ 17).  This Incident may give rise to claims for cargo

loss, damage to the Vessel, and personal injury claims, all of which are cognizable

under general maritime law. (Karpousis Decl. ¶18).

39.     AMS did not have any direct losses from the Incident, and thus its only

claim or crossclaim would be for defense and indemnity.  (Karpousis Decl. ¶ 19).  No

lawsuits have yet been filed, and, without losses of its own, AMS it not able to file

suit.[2]  However, even if it had the ability to bring a claim, the timeline for the filing of pleadings and discovery in the normal course would be insufficient to protect against the loss of evidence that will likely occur in the interim.  (Karpousis Decl. ¶ 20).

> *(B)     the subject matter of the expected action and the petitioner's interest;*

40.     The Incident may give rise to claims for cargo loss, damage to the Vessel, and personal injury claims. (Karpousis Decl. ¶ 18).  These claims may be prosecuted by a variety of claimants, including the cargo owners, cargo shippers or consignees, freight forwarders or non-vessel operating common carriers, the Vessel, Vessel Owner, and firefighters and/or firefighters' estates.  AMS did not have any direct losses from the Incident, and thus its only claims or crossclaims would be for defense and indemnity.  (Karpousis Decl. ¶ 19).

> *(C)the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;*

40.     AMS seeks production of documents, inspections of the Vessel, and the depositions of crewmembers to preserve evidence that may support its defenses

---

[2] A party is not required to have an affirmative claim to be entitled to Rule 27 discovery and courts have permitted perpetuating evidence based on the likelihood a party may be a defendant in future litigation or hold a contingent claim. *See*, *M/V Allegra,* at 477 (granting Rule 27 discovery to party who could be named as a defendant in future litigation); *Phibro Commodities v. M.V. Rizcun Trader, et al.*, 1997 AMC 2023 (E.D. Pa. 1997)(permitting Rule 27 discovery to proceed based on a party's contingent interest in damaged cargo).

demonstrating that AMS was not responsible for the fire or subsequent losses arising from the fire. AMS also seeks to preserve any relevant evidence that may determine whether the Vessel should bear any percentage of fault for failure to extinguish the fire for six days.

> (D) *the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known;*

41.    Although the investigation is ongoing, based on the identity of parties whose property or personnel were present at the time of the fire, AMS anticipates that any future litigation arising from the Incident would likely include the following parties:

  a.    Petitioner AMS located at 138 Marsh St, Newark, New Jersey, 07114, and represented by the undersigned counsel.

  b.    Ports America located at 171 Marsh Street, Port Newark, NJ 07114 and represented by Gino Zonghetti and Robert Suarez of Kaufman Dolowich Voluck, Court Plaza North, 25 Main Street, Suite 500, Hackensack, NJ 07601.

  c.    M/V COSTA GRANDE D'AVORIO (IMO No. 9465382) represented by Vincent DeOrchis and Timothy Semenoro of Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY, 10022.

       d.     Grimaldi Deep Sea S.p.A. located at Via Marchese Campodisola 13, 80133 Naples NA, Italy, represented by Vincent DeOrchis and Timothy Semenoro of Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY, 10022.

At this time, we do not yet know the specific identities of the 16 crewmembers being held here in the United States as Owner has not provided that information to AMS.

(E) *the name, address, and expected substance of the testimony of each deponent.*

42.     AMS seeks the production of documents so that its experts can properly and adequately identify areas of the Vessel to inspect prior to their alteration and so that AMS's attorneys can conduct meaningful depositions of crewmembers prior to their departure from the United States.  AMS also seeks the right to inspect areas of the ship and/or equipment aboard the Vessel as determined by AMS's experts after their review of the relevant documents, so that they may perpetuate proof of the Vessel's current condition prior to alteration in the course of repairs.  AMS also seeks the deposition of crewmembers with knowledge of the firefight, firefighting systems aboard the Vessel, and crew training and certifications related to firefighting and Vessel equipment prior to their departure from the United States. (Deegan Decl. ¶ 7-12, Dolente Decl. ¶ 5-10, Goodman Decl. ¶ 6-11)

43.     AMS expects that perpetuation of the above evidence will protect AMS's ability to fairly defend itself from any future claims, to seek contribution, defense, and indemnity from any appropriate parties, and to determine whether any party's negligence may have contributed to the loss.

## II.     Petitioner AMS's requests to perpetuate evidence are reasonable and may prevent injustice and unnecessary prejudice.

44.     If the Court is satisfied that perpetuating the evidence sought by AMS would prevent a failure or delay of justice, Rule 27 provides that the court "must" issue an order to aid perpetuation of evidence.  Fed. R. Civ. P. 27.

45.     The fire at issue continued to burn for six days on an ocean-going vessel loaded with hundreds of vehicles.  Preliminary visual inspections of areas affected by the fire show significant cargo loss and damage to the Vessel, which is capable of carrying thousands of vehicles.  Additionally, two firefighters lost their lives when responding to the fire.  The losses associated with the fire are unquestionably serious and significant.

46.     Further, the vessel is foreign flagged (Italy) and it is believed to have a foreign crew.  Once sufficient temporary repairs are made to the Vessel so that it can safely sail to another port, AMS expects that the Vessel and its crew will leave the United States, beyond this Court's subpoena power. In fact, we have been informed by Owner that Vessel repairs will likely occur "somewhere in the Mediterranean."

(Karpousis Decl. ¶20). Should crewmembers later be terminated or quit, AMS will have no ability or recourse to depose them in connection with any expected litigation, as they will be outside the jurisdiction and subpoena power of the Court.

47.     In addition to the Vessel's departure, the Vessel's attorneys have also indicated that "salvors are proceeding with their salvage plans," which means that the condition of the Vessel may be changing on an ongoing basis.  To the extent the present condition of certain equipment may be relevant to AMS's claims and defenses, such conditions must be properly documented and recorded now before they are permanently altered.

48.     In light of the serious and significant losses arising from the fire, AMS's requests for documents, inspection, and depositions are reasonable and necessary to prevent any injustice that may occur if evidence is lost prior to the initiating of a lawsuit.

### A.     Documents Requested

49.     AMS requests that the documents attached hereto as Exhibit 4 be disclosed as soon as possible by the Vessel and Owner.  AMS's experts have requested these materials so that they can identify areas of the Vessel or equipment aboard the Vessel that require inspection.  (Deegan Decl. ¶ 7-12, Dolente Decl. ¶ 5-10, Goodman Decl. ¶ 6-11).  The documents generally seek information concerning portable and fixed firefighting equipment aboard the Vessel, routine logs where

crewmembers would record information regarding the Vessel's condition and operations, relevant policies and procedures that would identify appropriate responses to a fire on this particular Vessel, and information that may help identify potential causes of the fire. *Id.*

50.  Also, foreign crewmembers who may have knowledge regarding the firefight, condition of Vessel equipment, and relevant training and certifications will depart the United States once permitted by government authorities currently investigating the Incident.  Owner's counsel has already informed AMS that twelve (12) of the twenty-eight (28) crewmembers have already departed the jurisdiction. As explained *infra*, AMS requires the opportunity to depose Vessel crewmembers before they depart the United States because they will then be beyond the Court's subpoena power and their return to the jurisdiction to offer testimony in discovery depositions or at trial cannot be guaranteed.  Once permitted to leave the United States, crewmembers may quit or be terminated, and Owner would have no control over them.  In order to prepare for meaningful depositions of the crewmembers, AMS's counsel require the requested documents in order to obtain relevant knowledge from the witnesses prior to their departure from the United States. (Karpousis Decl. ¶ 12, 21).

### B.    Inspection of the Vessel

51.    AMS requests that its experts be permitted to visually inspect, photograph, and video record areas of the Vessel or the Vessel's equipment as may be requested following their review of the requested documents.  Because the condition of the Vessel is changing due to salvage operations, AMS requests these inspections to preserve evidence depicting the immediate post-fire condition of relevant areas and equipment.  This will aid AMS's experts' evaluation of the fire cause and origin, adequacy and functionality of shipboard fire suppression systems, and adequacy of the crew's response to the fire.

52.    Owner has complained that these requests are overly broad. AMS disagrees and relies on its experts to determine what documents may or may not be relevant to their analysis.  AMS's requests for documents is intended to be exhaustive, but not overly broad, and to ascertain information needed by the experts to inspect the Vessel.  The documents are not identified by vague and generic categories, but instead by specific descriptions that should enable Owner to quickly locate the subject documents (e.g. Vessel's ventilation diagram; owner and operator manual for Vessel's fixed fire suppression system; cargo hold alarm logger). Frankly, it is for AMS's experts to determine what documents they need, and not for Owner to dictate to AMS what documents are relevant.  And, despite any disagreements regarding relevance, Owner has produced only two documents for

AMS's experts to rely on to investigate this serious casualty, which is wholly inadequate.

### C.   Depositions of Crewmembers

53.   AMS requests that all crewmembers presently in the United States be made available for deposition prior to any crewmember departing the United States, including, but not limited to:

> Master: Alessandro Moretti
> Chief Mate: Benito La Fauci
> Chief Engineer: Renato Mandapat
> Second Mate: Nicholo Lequigan
> Bosun: Abelardo Pua

54.   Owners have generally raised two arguments to oppose production of crewmembers for deposition.  First, Owner has argued that the USCG, NTSB, ATF, and perhaps others have been and continue to question crewmembers.  Owners have indicated that to the extent a USCG hearing will be held regarding the Incident, that depositions should wait until after the hearing is complete.

55.   AMS agrees that depositions can wait until after any government hearing or investigation is complete *unless a crewmember will otherwise depart the United States*.  Prior to any crewmember departing the United States, and thus escaping this Court's subpoena power, AMS requests the opportunity to depose them to preserve all relevant knowledge and testimony.  Otherwise, once outside the

United States, crewmembers may scatter to the wind outside of either the Court's or Owner's control.

56.     Second, Owner has argued that some crewmember interviews conducted by the USCG will be made available to AMS, and Owner claims this should nullify the need for AMS to depose them.  Even if true, Owner however fails to acknowledge that aside from some limited circumstances, USCG Marine Casualty Reports are subject to 46 U.S.C. § 6308, which generally prevents aspects of the report from being admissible in a civil lawsuit.  Contrarily, Rule 27 expressly provides deposition testimony taken pursuant to the rule may be used in any later-filed district-court action involving the same subject matter.  Fed. R. Civ. P. 27(a)(4).  Also, AMS is entitled to mount its own defense and/or prosecution of claims and for its attorneys to question witnesses as they see fit.  Owner ignores that the USCG and AMS would have different goals in their respective questioning, and one is not a substitute for the other.

## CONCLUSION

57.     AMS respectfully requests a hearing to address its petition as soon as possible.  Although Rule 27 provides that a petitioner should provide "expected adverse parties" with 21-days' notice before a hearing date, courts have found that this requirement can be waived or modified by the Court depending on the needs of

the case.  *In re Deiulemar Di Navigazione S.p.A.* 153 F.R.D. at 593 (noting that the 20-day notice requirement in Rule 27 was "not sacrosanct" and could be modified); *see also, Phibro Commodities v. M.V. Rizcun Trader, et al.*, 1997 AMC 2025 (scheduling a hearing on a Rule 27 petition to occur three days after filing of the petition).

58.     In sum, AMS seeks the immediate perpetuation of evidence under Rule 27 to prevent the likely injustice that may otherwise occur if the Vessel condition is altered and if the Vessel or its crewmembers depart the jurisdiction of the United States.  AMS respectfully requests that the Court issue an order to enforce AMS's rights to perpetuate evidence in consideration of the gravity of the losses at issue and the urgency with which evidence may be lost.

**WHEREFORE,** AMS respectfully prays that pursuant to Rule 27 of the Federal Rules of Civil Procedure the Court grant AMS's petition and issue an order requiring the Vessel and Owner to appear and show cause why the following relief should not be granted:

(a)     the Vessel and Owner shall produce documents and data requested by AMS within seven days of the filing of this petition;

(b)     the Vessel and Owner shall immediately permit inspection of areas of the Vessel and equipment aboard the Vessel to be requested by AMS's experts following their receipt and review of the requested documents and data once

the Vessel is returned to Owner by the investigating authorities, but prior to the Vessel's departure from Port Newark;

(c)     the Vessel and Owner shall make all crewmembers available for depositions prior to their departure from the United States, and;

(d)     AMS shall be granted any other and further relief as may be appropriate.


Dated:        New York, New York
              August 1, 2023

                        FREEHILL HOGAN & MAHAR LLP

                        By: _____
                        John F. Karpousis (karpousis@freehill.com)
                        J. Tanner Honea (honea@freehill.com)
                        Matthew J. Pallay (pallay@freehill.com)
                        80 Pine Street, 25th Floor
                        New York, NY 10005-1759
                        Tel: (212) 425-1900 / Fax:  (212) 425-1901
                        *Attorneys for Petitioner AMS*

## **VERIFICATION**

STATE OF NEW JERSEY

COUNTY OF ESSEX

    I, Joseph Perez, declare under penalty of perjury as follows:

1.    I am the ~~President~~ *Director* of Petitioner American Maritime Services of New York ("AMS") located at 138 Marsh St, Newark, New Jersey, 07114.   I have reviewed AMS's Verified Petition and I make this Declaration in support of AMS's Petition for Perpetuation of Evidence Pursuant to Rule 27 of the Federal Rules of Civil Procedure.

2.    The foregoing Verified Petition is true to my own knowledge except as to those matters alleged by the declaration of other witnesses or alleged upon information and belief, and as to those matters, I believe them to be true.

3.    This verification is made on behalf of Petitioner AMS.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                    _____

                          Joseph Perez

597086.1