292-23/JFK
John F. Karpousis
J. Tanner Honea
Matthew J. Pallay
FREEHILL HOGAN & MAHAR LLP
80 Pine Street, 25TH Floor
New York, NY  10005
(212) 425-1900
karpousis@freehill.com
*Attorneys for Petitioner American Maritime Services*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN THE MATTER OF THE VERIFIED PETITION OF AMERICAN MARITIME SERVICES OF NEW YORK TO PRESERVE EVIDENCE IN AID OF ANTICIPATED LITIGATION PURSUANT TO RULE 27 FED. R. CIV. P. | 23-cv-_____<br><br>**DECLARATION OF JOHN F. KARPOUSIS IN SUPPORT OF VERIFIED PETITION TO PRESERVE EVIDENCE PURSUANT TO RULE 27 FED. R. CIV. P.** |

I, John F. Karpousis, declare:

1.      I am a partner with the firm of Freehill Hogan & Mahar, LLP, attorneys for Petitioner American Maritime Services of New York ("AMS").  I am fully familiar with the pleadings herein and I make this Declaration in support of AMS's Petition for Perpetuation of Evidence Pursuant to Rule 27 of the Federal Rules of Civil Procedure.

597009.2

2.      Attached hereto as **Exhibit 1** is a true and accurate copy of written communications between AMS's attorneys with attorneys for the M/V COSTA GRANDE D'AVORIO (the "Vessel") and Grimaldi Deep Sea S.p.A. ("Owner") from July 11, 2023.

3.      Attached hereto as **Exhibit 2** is a true and accurate copy of written communications between AMS's attorneys with attorneys for the Vessel and Owner from July 20, 2023.

4.      Attached hereto as **Exhibit 3** is a true and accurate copy of written communications between AMS's attorneys with attorneys for the Vessel and Owner from July 20-24, 2023, which has been redacted to exclude sensitive information related to the ongoing investigation.

5.      Attached hereto as **Exhibit 4** is a true and accurate copy of AMS's demand for documents and data, which is nearly identical to the list previously served on Owner's counsel in correspondence dated July 11 and 20, with a few additions based on subsequent information obtained.

6.      Attached hereto as **Exhibit 5** is a true and accurate copy of AMS's demand for information regarding the Vessel's schedule and valuation and Owner's responses dated July 30, 2023.

597009.2

7.     Attached hereto as **Exhibit 6** is a true and accurate copy of communications with Owner's counsel regarding the current Vessel condition and planned future alterations and repair to the Vessel's equipment, dated July 31, 2023.

## BACKGROUND

8.     AMS is aware that a fire occurred aboard the Vessel on or about July 5, 2023, while AMS's personnel were loading vehicles aboard the Vessel. (the "Incident"). The fire caused extensive damage to the Vessel and cargo, and it sadly resulted in the loss of two firefighters from the Newark Fire Department.

9.     Several government agencies are investigating the circumstances around the fire and subsequent firefight, including the U.S. Coast Guard ("USCG"), the National Transportation and Safety Board ("NTSB"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the New Jersey Essex County Prosecutor's Office.

10.     Given the loss of life and large property loss, and the fact that the fire is currently believed to have begun in the cargo hold while loading operations were ongoing, AMS anticipates that it will eventually be named as a party in future litigation arising from the Incident. Several of its employees have already been interviewed by the USCG, and it is understood that similar interviews have occurred or will occur concerning the Vessel's crew, Ports America personnel, Newark Fire Department personnel, and others.

3

597009.2

11.     The fire ultimately burned in the cargo storage area where vehicles had been and were being loaded, and AMS anticipates that it, Ports America, the Vessel, and Owner will likely be named as parties to any future lawsuits arising from the fire, whether as direct defendants or third-party defendants.

12.     On July 11, 2023, AMS sent correspondence to attorneys representing the Vessel and Owner requesting that they protect and preserve all documents, data, and electronically stored information ("ESI") related to the Incident in anticipation of litigation.  Ex. 1.  The correspondence also included a preliminary request for documents and data and sought production of these materials as needed to aid AMS's experts' inspection of the Vessel. *Id.*

13.     On July 12, counsel for the Vessel produced only one of the requested documents, a General Arrangement Plan[1], which is a general drawing or schematic depicting the Vessel's different compartments with very little detail.

14.     On July 14, and without producing any other documents or information, the Vessel permitted Ports America and AMS to conduct a limited visual inspection of three cargo decks:  Decks 10 (the deck where the fire first occurred), 11, and 12. AMS's experts, without the aid of any relevant Vessel-specific information or data, attended and photographed areas permitted by the Owner.  AMS's experts were

---

[1] Indeed, Owner provided a General Arrangement Plan for the GRANDE ANGOLA, not the GRANDE D'AVORIO.

joined by experts and counsel for Ports America, and they were escorted on the Vessel by Owner's attorneys, experts, and appointed salvage personnel from DonJon Marine, Co., Inc.  The inspection lasted a mere two hours (approximately).

15.     Later, on July 14, Owner's counsel advised that the Vessel had 28 crewmembers onboard, and that the USCG was permitting 12 of them to return home while keeping the other 16 in New Jersey and holding their passports.

16.     On July 20, 2023, AMS sent further correspondence to the Vessel and Owner seeking permission to inspect the Vessel's fire suppression system, including all related control and alarm panels, activation sites, storage rooms, supply and distribution piping, and any other part or component. Ex. 2. AMS also reiterated its request for documents, incorporating the same list it had previously served on counsel on July 11. *Id.* AMS also requested access to the crew and an opportunity to interview the master, chief mate, chief engineer, second mate, bosun, any crewmembers who responded to the scene of the fire, and any other crewmembers who have knowledge of the fire and related firefight. *Id.* AMS expressly provided that without an agreement to produce the requested information, AMS would seek court intervention as appropriate. *Id.* The requested documents and data are needed by AMS's experts to identify all relevant areas of the Vessel to inspect prior to alteration and/or the Vessel departing the United States, and to enable AMS's

5

attorneys to take meaningful depositions of crewmembers before they depart the United States.

17.     In correspondence from Owner's counsel on July 24, 2023, counsel rejected production of the requested documents and informed AMS that the Owner "[is] not making the crew available to AMS and Ports America." Ex. 3.   Owners simultaneously provided that AMS would have the opportunity only to visually decks 9-12 of the Vessel and the "CO2 Room," but also noted that "salvors are proceeding with their salvage plans" and the "USCG investigation and salvor's work takes priority over the AMS and Ports Americas desire to obtain pre-litigation discovery." *Id.*  Counsel further noted, "If your goal is to view the vessel before the vehicles and debris are cleared, then we suggest a return visit as soon as possible." *Id.*

18.     Owner then announced that they would permit only a visual inspection of Vessel Decks 9-12 and the "CO2 Room" on July 25.  On the evening before the inspection, Owner's disclosed the Vessel's "Fire Control and Safety Plan," which is a drawing showing the location of firefighting equipment on the Vessel.  No other documents were produced prior to the limited inspection, and no further documents have been produced as of the filing of this petition.

19.     A limited visual inspection of the areas permitted by Owner occurred on July 25, including a laser scan conducted by AMS's experts to record the location

6

597009.2

of items on Decks 10-12. Like the July 14 inspection, this inspection was similarly limited, but attended by experts and attorneys for AMS, Ports America, and the Vessel, and all parties were escorted by Owner's contractor DonJon Marine Co. However, the parties were only permitted to view Decks 9-12, the "CO2 Room," the bridge, and select exteriors of crewmember accommodations. No other areas of the Vessel were made available, and no other documents were provided.

20.   On July 30, 2023, the undersigned wrote to Owner's counsel and requested a timetable for the Vessel's departure from Port Newark and valuation of the Vessel. Owner's counsel first responded he could not provide a "definitive answer" to any of the questions raised. Later that day, after being further pressed, counsel indicated he "heard rumor" the Vessel may get repairs "in the Mediterranean." Ex. 5 at p 1.

21.   On July 31, 2023, counsel for Owner's further described the nature of ongoing repairs and alteration of the Vessel's condition. Counsel explained that everything on the Vessel "will be brought back up to operational standards," and "burned and damaged equipment will be discarded. Fixed systems will be repaired, as needed." Ex. 6 at p.1. Among the systems to be repaired, Owner included "any and all fire suppression systems aboard the vessel," and "all fire pumps, fire stations, smoke detectors, smoke alarms, all firefighting detection and suppression systems." Owner's counsel then reiterated that as to AMS's requests to depose crewmembers,

7

597009.2

Owner's position "remains the same," and Owners "are not making crew available to AMS and Ports America." *Id.* at 2.

22.     In accordance with Owner's representations, there is no question that conditions on the Vessel are being altered, *including the condition of fire suppression equipment*, which will clearly be relevant in any future litigation. Owners are making these alterations without having provided AMS's experts with any of the documents or data requested, preventing them from identifying all relevant areas of inspection prior to their alteration.  Nor does it appear that Owner is willing to provide the Vessel for any further inspection once the USCG releases the Vessel.  Moreover, Owner has consistently communicated that it "will not" make any of the foreign crewmembers available to AMS for deposition.  It is for these reasons that this application is being made.

23.     AMS seeks to preserve evidence that will be lost if the Vessel is permitted to alter the condition of equipment relevant to AMS's experts' investigation, take the Vessel outside of the Court's jurisdiction, or permit crewmembers to return home outside of the United States without first providing a sworn account of what occurred during the fire and ensuring firefighting efforts. Owner's counsel provides no assurance, and in fact confirms, that the information and inspection requested will not be provided to AMS before it may be lost, altered, repaired, and/or beyond the subpoena power of this Court.

597009.2

24.     This Incident will likely give rise to claims for cargo loss, damage to the Vessel, and personal injury claims, all of which are cognizable under general maritime law.  These claims may be prosecuted by a variety of claimants, including the cargo owners, cargo shippers or consignees, freight forwarders or non-vessel operating common carriers, the Vessel, Vessel Owner, and firefighters and/or firefighters' estates.  AMS's request to preserve evidence is for the benefit of all parties, including parties who are currently known to have an interest in the incident or those who are unknown but may become involved in future litigation arising from the incident.

25.     No lawsuits have yet been filed, and, without losses of its own, AMS it not able to file suit.  However, even if AMS had the ability to bring a claim, the timeline for the filing of pleadings and discovery in the normal course would be insufficient to protect against the loss of evidence that will likely occur in the interim.

26.     As counsel for AMS, in order to prepare for meaningful depositions of the crewmembers to perpetuate their testimony, we require the documents and data requested in Exhibit 4 in order to obtain relevant knowledge from the witnesses prior to their departure from the United States.

27.     It is clear from Owners' restrictions and unwillingness to disclose documents and ESI, permit a full and thorough investigation of the Vessel by AMS's experts, or to agree to produce the crew for deposition, that AMS will be prejudiced

9

without the Court's intervention.  Rule 27 is specifically crafted to preserve evidence that may otherwise be lost and prejudice the fair adjudication of subsequent litigation, and the temporary nature of the Vessel's condition and the presence of its foreign crewmembers in the United States are the precisely types of evidence that require preservation prior to litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 31st day of July, 2023 at New York, New York.

John F. Karpousis

10

597009.2