UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN THE MATTER OF THE PETITION OF AMERICAN MARITIME SERVICES OF NEW YORK TO PRESERVE EVIDENCE IN AID OF ANTICIPATED LITIGATION PURSUANT TO RULE 27 FED. R. CIV. P. | 23-cv-_____<br><br>**DECLARATION OF PETER DEEGAN IN SUPPORT OF VERIFIED PETITION TO PRESERVE EVIDENCE PURSUANT TO RULE 27 FED. R. CIV. P.** |

I, Peter Deegan, declare:

1.       I am a Marine Engineer with over forty years' experience in the marine and oil industry. I obtained a National Technician's Diploma in Marine Engineering from Durban University of Technology, as well as BSc in Management from Colorado Technical University. I am both a certified Lubrication Specialist and a Fellow of the Institute of Marine Engineering, Science & Technology. I served in the South African merchant navy as a Marine Engineer for approximately eight (8) years, during which I sailed on numerous general cargo and container vessels. I have served as a marine surveyor for nearly fifteen (15) years, including as the Principal Surveyor for different organizations. Throughout my career, I have been heavily involved in all aspects of marine surveying, including vessel salvage, Hull & Machinery surveys, P&I surveys, JH Warranty surveys, and marine casualty investigations. I am currently a Senior Surveyor for ABL Group.

2.       I am over the age of 18 and have personal knowledge of the matters set forth in this declaration unless otherwise stated.

597010.1

3.     I was retained by American Maritime Services of New York ("AMS") to assist in the investigation related to the fire that reportedly occurred onboard the M/V GRANDE COSTA D'AVORIO (the "Vessel") on or about July 5, 2023. as well as the present condition of the vessel and affected cargo. The purpose of the investigation is multifold, including the present condition of the Vessel, the Vessel's compliance with regulatory framework, the condition and efficacy of the Vessel's fire suppressing resources and equipment, the Vessel crew's response to the fire, as well as to gather and collect evidence. I understand that AMS provided stevedoring services to Ports America, the operator of the Port of Newark terminal at which the vessel was docked, to facilitate in loading cargo onto the vessel. As I have observed, the fire caused severe and pervasive damage to the bridge and multiple decks on the vessel.

4.     I attended on board the vessel on July 14 and July 25, 2023. At the time of my attendance, the vessel was located in the Port of Newark in Newark, New Jersey. Also in attendance were marine surveyors and forensic fire consultants acting for other interested parties. Prior to the July 14 boarding, I was only permitted to review the Vessel's General Arrangement, which was produced by the Owners two (2) days earlier. Similarly, on the evening before the July 25 boarding, the Owners produced the Vessel's Fire Control Safety Plan, which is a drawing showing the location of firefighting equipment on the Vessel. No other documents were made available for inspection prior to either boarding.

5.     The inspection on July 14 was limited to a visual inspection of Deck Nos. 10, 11, and 12. During my inspection, I observed fire damage that was pervasive throughout Decks 10, 11, and 12. Additionally, nearly all automobiles

597010.1

stored within Decks 10, 11, and 12 were severely damaged and/or destroyed by the fire. Many of the fire suppression devices present in Decks 10, 11, and 12 were also damaged and/or destroyed. I was also able to observe some portable and fixed fire suppression equipment that was used during the firefighting efforts.

6.      The inspection on July 25 was dedicated to visually inspecting Decks 6-12, the Bridge, the Living Quarters, and the $CO_2$ Room. During my inspection, I observed extensive fire damage in the Bridge, which was largely destroyed. I was also present while a laser scan was performed on the Vessel by other experts retained by AMS.

7.      I have reviewed the documents and data disclosed by the Owners thus far, which is limited to only the vessel's General Arrangement and the Fire Safety Plan, and find that additional information is necessary to determine what other equipment or areas of the Vessel should be inspected prior to their condition being altered in the course of salvage and repair. This is especially true of all documents, memoranda, logs, recordings, and/or other files, whether electronic or hard copy, recording the events preceding and subsequent to the fire, including fire suppression efforts, until the fire was extinguished. That information is imperative to determining the cause and origin of the fire and assessing the crewmember response and the operation and efficacy of the fire suppression systems

8.      Furthermore, I have reviewed Exhibit 4 to AMS's Petition for Perpetuation of Evidence, which is titled "American Maritime Services of New York's Preliminary Document Request," and it is my opinion that the documents and data identified in Exhibit 4 should be preserved to assist my analysis regarding the use and condition of fixed firefighting systems, portable firefighting equipment,

597010.1

and the crew's response to the fire.  These requests are reasonable and necessary to assist the marine surveyors and forensic fire consultants in working to determine the origin and cause of the fire, the present condition of the vessel and remaining onboard cargo, the operating condition of the vessel and the onboard fire suppressing systems, and the effectiveness of the onboard fire suppression systems and the vessel crewmembers response to the fire.

9.      Further, the documents and data identified in Exhibit 4 are necessary for me to identify particular locations or equipment on the Vessel that may be relevant to my analysis and need to be inspected before they are altered in the course of salvage and repair efforts.  Every Vessel is unique, and the only way to know where all relevant components of relevant systems are located, or what equipment or procedures crewmembers on this particular Vessel were intended to use in the event of a fire, is to review the information requested in Exhibit 4.  These documents are routinely maintained aboard vessels or by vessel owner's shoreside personnel and should not be burdensome for the Vessel or owner to produce.

10.     Furthermore, it is imperative that I and the other marine surveyors and forensic fire consultants be permitted broad access to the Vessel in order to inspect and examine the decks affected by the fire and all items therein; the Bridge and other affected areas; and the vessel's fire suppression system, including all related control and alarm panels, activation sites, storage rooms, supply and distribution piping, and any other part or component of the system, prior to any alterations. Examples of such alterations include, but are not limited to, performing maintenance and repairs, conducting salvage operations, and/or performing any other activity that would potentially permanently alter the current physical condition of the vessel, any of its component parts, and / or any items contained therein. Performing physical

597010.1

examinations and inspections of the current, unaltered condition of the vessel are essential to assist the marine surveyors and forensic fire consultants in working to determine the origin and cause of the fire, the present condition of the vessel and remaining onboard cargo, the operating condition of the vessel and the onboard fire suppressing systems, and the effectiveness of the onboard fire suppression systems and the vessel crewmembers response to the fire.

11.    To complete an investigation into the casualty, the following specific items should also be preserved and/or made available for inspection, to the extent possible:

    a. Jeep Pusher vehicle involved in the fire;
    b. Toyota non-runner that was being pushed by the Jeep Pusher vehicle at the time of the fire;
    c. Fire suppression systems aboard the vessel;
    d. Fire pumps;
    e. Fire hoses;
    f. Fire stations;
    g. Portable extinguishers;
    h. Firefighting locker and equipment stored therein, including any inventory made thereof;
    i. All other firefighting equipment including self-contained, breathing apparatus, fire suits;
    j. All fighting detection and suppression systems;
    k. All VDR, data panels, and any other data recorders;
    l. Smoke detectors;
    m. Smoke alarms;

597010.1

    n.  Heat detectors;

    o.  Heat detecting systems;

    p.  Heat detection alarms;

    q.  Any system which records fire alarms, or sirens;

    r.  Any other fire warnings;

    s.  Any system which records or tracks the engagement or sounding off of smoke detectors or alarms; and

    t.  Any system which records or tracks the engagement or sounding of or heat detectors or alarms.

12.    In addition to the data, documents, and items requested, interviewing crewmembers is also an important element to any casualty investigation. The crew of the Vessel likely possess firsthand knowledge of the events surrounding the fire, including the origin and cause of the fire, as well as the attempts made to contain and extinguish it. These firsthand accounts of the fire and the Vessel's response to it not only inform and complement the requested documentary materials, but also allow investigators the opportunity to obtain information that is otherwise not available.

13.    I have been involved in investigating numerous fire casualties over the course of my career. It is a custom and practice, particularly in the maritime industry, for the interested parties to work cooperatively to agree to a protocol for the investigation and for collection and preservation of relevant physical evidence using appropriate chain of custody documentation. This process is common and routine and occurs in the ordinary course of business in this industry.  In this matter, although there has been collaboration regarding preservation and inspection of some materials, there has been an insufficient sharing of relevant documents and data needed to properly assess all areas for inspection.

597010.1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 31st day of July, 2023

Peter Deegan

597010.1